LAURA A. STOLL (SBN 255023)
LStoll@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 South Figueroa Street
Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

ALLISON J. SCHOENTHAL (*pro hac vice*)
ASchoenthal@goodwinlaw.com
ALYSSA A. SUSSMAN (*pro hac vice*)
ASussman@goodwinlaw.com
**GOODWIN PROCTER** LLP
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

Attorneys for Defendant
SELECT PORTFOLIO SERVICING, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARAH MIRABADI, individually and on behalf of a class of other similarly situated individuals,<br><br>           Plaintiff,<br><br>    v.<br><br>SELECT PORTFOLIO SERVICING, INC., a Utah Corporation, and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No. 2:23cv06809−PSG−SP<br><br>**DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      January 26, 2024<br>Time:     1:30 p.m.<br>Judge:    Hon. Philip S. Gutierrez<br>Courtroom:   6A<br><br>Filed Concurrently With:<br>1. Notice of Motion to Dismiss;<br>2. Declaration of Alyssa A. Sussman;<br>3. [Proposed] Order |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 5

I.    PLAINTIFF LACKS INJURY OR STATUTORY STANDING AS
      TO THREE OF HER FOUR CLAIMS, REQUIRING DISMISSAL. ........... 5

II.   THE COMPLAINT OTHERWISE IS DEFICIENT AND SHOULD
      BE DISMISSED IN ITS ENTIRETY. ........................................................ 8

      A.    THE BREACH OF CONTRACT CLAIM (FIRST CAUSE OF
            ACTION) SHOULD BE DISMISSED BECAUSE PLAINTIFF
            HAS NOT PLAUSIBLY ALLEGED ANY BREACH. ...................... 8

            1.    There was no breach under Plaintiff's claim that the EZ
                  Pay fee was not "authorized" in the DOT. ............................ 8

            2.    There was no breach on the theory that the EZ Pay fee
                  was prohibited by law. ........................................................ 12

      B.    THE ROSENTHAL ACT CLAIM (SECOND CAUSE OF
            ACTION) SHOULD BE DISMISSED. ........................................... 14

      C.    THE "UNLAWFUL" UCL CLAIM (THIRD CAUSE OF
            ACTION) SHOULD BE DISMISSED. ........................................... 17

      D.    THE CLRA CLAIM (FOURTH CAUSE OF ACTION)
            SHOULD BE DISMISSED. ........................................................... 17

CONCLUSION .................................................................................................. 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000)..................................................................6

*Bardak v. Ocwen Loan Servicing, LLC*,
   2020 WL 5104523 (M.D. Fla. Aug. 12, 2020)...........................................11, 12

*Becerra v. Allstate Northbrook Indem. Co.*,
   2022 WL 2392456 (S.D. Cal. July 1, 2022)................................................6

*Becker v. Wells Fargo Bank, N.A., Inc.*,
   2011 WL 1103439 (E.D. Cal. Mar. 22, 2011) ...........................................18

*Beer v. Nationstar Mortg. Holdings, Inc.*,
   2015 WL 13037309 (E.D. Mich. July 15, 2015)........................................9

*Brien v. J.P. Morgan Chase Bank, N.A.*,
   2010 WL 11597806 (C.D. Cal. July 9, 2010) ...........................................12

*Estate of Campbell v. Ocwen Loan Servicing, LLC*,
   2020 WL 5104538 (S.D. Fla. Apr. 30, 2020)............................................11

*Cappellini v. Mellon Mortg. Co.*,
   991 F. Supp. 31 (D. Mass. 1997)............................................................11

*Cassese v. Washington Mut., Inc.*,
   2008 WL 8652499 (E.D.N.Y. June 27, 2008)...........................................11

*Clark v. InComm Fin. Servs., Inc.*,
   2023 WL 3149284 (C.D. Cal. March 16, 2023) .......................................19

*Corral v. Nationstar Mortg., LLC*,
   2020 WL 802966 (E.D. Cal. Feb. 18, 2020) ............................................18

*Davis v. Homecomings Fin.*,
   2006 WL 2927701 (W.D. Wash. Oct. 10, 2006) ......................................11

*Elbert v. RoundPoint Mortg. Servicing Corp.*,
   2020 WL 4818605 (N.D. Cal. Aug. 19, 2020)...........................................17

ii

*Elliott v. QF Circa 37, LLC*,
  2017 WL 6389775 (S.D. Cal. Dec. 14, 2017) ................................................. 7

*Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*,
  130 Cal. App. 4th 1078 (2005) ...................................................................... 6

*Fairbanks v. Superior Court*,
  46 Cal. 4th 56 (2009) .................................................................................. 18

*Fierro v. Capital One, N.A.*,
  --- F. Supp. 3d ----, 2023 WL 1999482 (S.D. Cal. Feb. 14, 2023) ...................... 3

*Flores v. Collection Consultants of California*,
  2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) ........................................... 10, 15

*Garbutt v. Ocwen Loan Servicing, LLC*,
  2020 WL 5641999 (M.D. Fla. Sept. 22, 2020) ............................................... 11

*Gardner v. Safeco Ins. Co. of Am.*,
  2014 WL 2568895 (N.D. Cal. June 6, 2014) .................................................... 7

*Haroutoonian v. NewRez LLC*,
  2023 WL 2626970 (C.D. Cal. Jan. 10, 2023) .................................................. 15

*Hodges v. King's Hawaiian Bakery W., Inc.*,
  2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) .................................................... 5

*Jamison v. Bank of Am., N.A.*,
  194 F. Supp. 3d 1022 (E.D. Cal. 2016) ......................................................... 18

*Jerik v. Columbia Nat'l, Inc.*,
  1999 WL 1267702 (N.D. Ill. Sept. 30, 1999) .................................................. 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................................... 19

*Kelly v. Ocwen Loan Servicing, LLC*,
  2020 WL 4428470 (M.D. Fla. July 31, 2020) ................................................. 11

*Kier v. Ocwen Loan Servicing, LLC*,
  122 F. Supp. 3d 786 (N.D. Ill. 2015) ............................................................ 11

*Lang v. Ocwen Loan Servicing, LLC*,
  2020 WL 5104522 (M.D. Fla. July 17, 2020) ................................................. 11

MEMORANDUM ISO MOTION TO DISMISS

*Lembeck v. Arvest Cent. Mortg. Co.*,
  498 F. Supp. 3d 1134 (N.D. Cal. 2020)..........................................................3, 14

*Lish v. Amerihome Mortg. Co., LLC*,
  2020 WL 6688597 (C.D. Cal. Nov. 10, 2020)...........................................*passim*

*Mai v. Supercell Oy*,
  648 F. Supp. 3d 1130 (N.D. Cal. 2023).............................................................6

*Manos v. MTC Fin*., *Inc.*,
  2018 WL 6220051 (C.D. Cal. Apr. 2, 2018), *aff'd,* 773 F. App'x
  452 (9th Cir. 2019) ............................................................................................9

*Mariscal v. Flagstar Bank, FSB*,
  2020 WL 4804983 (C.D. Cal. Aug. 4, 2020) ..............................................12, 17

*Mariscal v. Flagstar Bank, FSB*,
  2021 WL 4260879 (C.D. Cal. Sept. 9, 2021)....................................................16

*Matchett v. BSI Fin. Servs.*,
  2023 WL 4678683 (10th Cir. July 21, 2023) .........................................9, 12, 16

*Meintzinger v. Sortis Holdings, Inc*.,
  2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) .....................................................10

*Meyer v. Sprint Spectrum L.P.*,
  200 P.3d 295 (Cal. 2009)...................................................................................6

*Montez v. Chase Home Fin. LLC*,
  2016 WL 4006524 (S.D. Cal. Feb. 1, 2016) ....................................................17

*PG-USA, Inc. v. St. Andrews Prods. Co.*,
  2009 WL 10700241 (C.D. Cal. July 2, 2009) ..............................................2, 10

*Reid v. Ocwen Loan Servicing, LLC*,
  2020 WL 5104539 (S.D. Fla. May 4, 2020)......................................................11

*Reynoso v. Paul Fin., LLC*,
  2009 WL 3833298 (N.D. Cal. Nov. 16, 2009)..............................................3, 18

*Spiegler v. Home Depot U.S.A., Inc.*,
  2008 WL 2699787 (C.D. Cal. June 30, 2008)...................................................19

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
  2021 WL 1253578 (C.D. Cal. Apr. 5, 2021)...............................................*passim*

MEMORANDUM ISO MOTION TO DISMISS

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)...............................................19

*Torliatt v. Ocwen Loan Servicing, LLC*,
   2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ...........................3, 9, 12

*Townsend v. Chase Bank USA N.A.*,
   2009 WL 426393 (C.D. Cal. Feb. 15, 2009), *aff'd* 445 F. App'x 920
   (9th Cir. 2011) .....................................................................................15

*Turner v. PHH Mortg. Corp.*,
   2020 WL 2517927 (M.D. Fla. Feb. 24, 2020) ....................................10

*U.S. v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ...........................................................2, 4

*United States v. Fairbanks Capital Corp.*,
   No. 1:03-cv-12219 (D. Mass.), ECF 6 ................................................13

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019).................................................13

*Vissuet v. Indymac Mortg. Servs.*,
   2010 WL 1031013 (S.D. Cal. March 19, 2010)...................................10

*Weller v. JP Morgan Chase Bank, N.A.*,
   2017 WL 3581099 (N.D. W. Va. Aug. 18, 2017)..................................9

*Zeppeiro v. Green Tree Servicing, LLC*,
   2014 WL 12596427 (C.D. Cal. Oct. 17, 2014) .....................................7

MEMORANDUM ISO MOTION TO DISMISS

**INTRODUCTION**

Plaintiff Farah Mirabadi ("Plaintiff")—the mortgagor of a home loan serviced by Select Portfolio Servicing, Inc. ("SPS")—attempts to make a class action case out of a fully-disclosed $5.00 fee for a service she requested and SPS provided in exchange for the fee. The "EZ Pay" fee arose when Plaintiff asked to submit her mortgage payment through SPS' website, rather than by mail for free as her written mortgage agreement (the "Deed of Trust" or "DOT") provides, and SPS agreed to this extracontractual arrangement conditioned on Plaintiff's agreement to pay that small convenience fee. Plaintiff nonetheless alleges that SPS' charging of the fully-disclosed and agreed-to fee for a service it provided at her request gives rise to claims for (1) breach of contract, (2) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* ("Rosenthal Act"), (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and (4) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

Plaintiff's attempt to make this routine business-to-consumer transaction into a class action case fails out of the gate because, in response to her pre-suit complaint, SPS took two actions that addressed her entire concern. First, SPS refunded to Plaintiff each and every one of the ten $5.00 fees that Plaintiff paid to SPS (a total of $50.00) to make her mortgage via the website. Second, SPS programmed its servicing system so that it does not charge Plaintiff for making future monthly payments that otherwise would be subject to an EZ Pay fee. These steps, alone, foreclose three of Plaintiff's four claims under Rule 12(b)(6) for lack of statutory standing, lack of damages, or both.

On the merits of the claims, each cause of action in Plaintiff's Complaint ("Complaint" or "Cmplt.") should be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim. All of Plaintiff's claims rest on the conclusory and demonstrably false allegations that the EZ Pay fee was not authorized in (and so

1

was somehow prohibited by) Plaintiff's Deed of Trust and otherwise violated state law.  But the relevant language from Paragraph 14 of Plaintiff's DOT—which Plaintiff tellingly omits from her Complaint—expressly provides that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee."  Declaration of Alyssa A. Sussman ("Sussman Decl.") Exhibit ("Ex.") 1 ¶ 14.[1]  And applicable federal law and California law are well-settled that fully-disclosed fees for the provision of an extracontractual service requested by a customer, like the EZ Pay fee Plaintiff challenges here, are legal to charge.  *PG-USA, Inc. v. St. Andrews Prods. Co.*, 2009 WL 10700241, at *3 (C.D. Cal. July 2, 2009) (Cooper, J.); *Thomas-Lawson v. Carrington Mortg. Servs.*, *LLC*, 2021 WL 1253578, at *5-6 (C.D. Cal. Apr. 5, 2021) (Wright, J.).  In addition, a federal court consent order, which the Federal Trade Commission entered into with SPS in 2003 (and which was updated in 2007), allows SPS to charge mortgage servicing fees—like the EZ Pay fees—so long as the fee is not prohibited by law or the loan instruments, is for a specific service requested by the borrower, and is assessed only after the fee is disclosed to the borrower and the borrower consents to pay it in exchange for the service.  Plaintiff does not assert facts that would defeat the applicability of those FTC Orders.

These and other undisputed circumstances require the dismissal of each of Plaintiff's four causes of action, for varying reasons depending on the claim.

Plaintiff's breach of contract claim (First Cause of Action) fails to state a claim because, as noted, the express language in her DOT precludes any claim that is purportedly based on that agreement.  Rather, Plaintiff voluntarily agreed to pay the fee in exchange for the extracontractual services she requested and received, in

---

[1] The Court may take judicial notice of Plaintiff's DOT in considering this Motion because Plaintiff "necessarily relies" on it in the Complaint.  *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *see, e.g.,* Cmplt. ¶¶ 17, 19, 20, 21, 26, 27, 44, 45.

line with established law which enforces agreements among parties that arise apart from a written contract. *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596, at *5 (N.D. Cal. Apr. 17, 2020). Plaintiff's fall-back theory that the contract was breached because the charge was illegal does not save her claim, because of a variety of authorities establishing the charge was not illegal.

Plaintiff's Second Cause of Action under the California debt-collection law, the Rosenthal Act, fails to state a statutory claim because (1) Plaintiff has failed to make the requisite allegation that SPS made a false "representation" (*Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020)), and (2) the Act does not apply because the EZ Pay fee was not added to the underlying debt obligation, so there was not prohibited collection on a covered debt (*Lish v. Amerihome Mortg. Co., LLC*, 2020 WL 6688597, at *8 (C.D. Cal. Nov. 10, 2020) (Walter, J.)).

Plaintiff's "unlawful"-prong UCL claim (Third Cause of Action) fails to state a claim because it is predicated solely on the defectively-pled Rosenthal Act claim. *Lish,* 2020 WL 6688597, at *4.

Finally, Plaintiff's Fourth Cause of Action under the CLRA fails to state a claim because (1) the CLRA does not apply to a mortgage servicing relationship, as a mortgage loan is not a "good" or a "service" covered under the CLRA (*Reynoso v. Paul Fin., LLC*, 2009 WL 3833298, at *9 (N.D. Cal. Nov. 16, 2009)) and (2) (like with the Rosenthal Act claim) Plaintiff has failed to make the requisite allegation that SPS made a false "representation" that could support a CLRA suit. *Fierro v. Capital One, N.A.*, --- F. Supp. 3d ----, 2023 WL 1999482, at *4 (S.D. Cal. Feb. 14, 2023).

## **BACKGROUND**

In 2005, Plaintiff took out a mortgage loan secured by her Los Angeles property, and SPS subsequently assumed servicing of that loan. Cmplt. ¶¶ 20, 21. Since August 2022—when SPS first began servicing Plaintiff's mortgage loan—

Plaintiff has elected to make her mortgage payments each month by "EZ Pay," through which she makes payments instantaneously online.  *Id.* ¶¶ 9, 21, 22.[2]  In contrast to no-fee payment methods, such as mailing a check, ACH transfer, and electronic bill pay through a bank, the EZ Pay service that Plaintiff chose had an associated fee of $5.00.  The fee was disclosed to Plaintiff and she consented to it in each instance.  *Id.* ¶¶ 9, 22.[3]  Indeed, as she used the service every month, Plaintiff plainly was fully cognizant of the fee and elected to pay it voluntarily.

The DOT for Plaintiff's mortgage loan contains a relevant provision regarding fees generally (other than ones specifically covered, like late charges).  It appears at Paragraph 14, entitled Loan Charges, and states in relevant part:

> **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. <u>In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.</u> Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Sussman Decl. Ex. 1 ¶ 14 (emphasis added).

---

[2] *See* Select Portfolio Servicing, Inc. Payment FAQ, *available at* https://www.spservicing.com/StaticDetails/PaymentFaq (last visited Oct. 30, 2023) (describing EZ Pay option).

[3] The mortgage statements that Plaintiff received from SPS plainly disclosed that if she wished to make her mortgage payment by phone or website, a fee of "up to $15.00" would be charged and then showed those charges after they had been paid. *See* Sussman Decl. Ex. 2 at pp. 1-2.  The Court may consider Plaintiff's monthly mortgage statements because she "refers to" the $5.00 "Mortgage Pay Fee-Web" ("EZ Pay Fee") that appeared on her monthly mortgage statements in the Complaint" (*see, e.g.,* Cmplt. ¶¶ 9, 22).  *Corinthian Colls.*, 655 F.3d at 999.

4

About ten months after Plaintiff started paying the fee, on or around May 17, 2023, Plaintiff's attorneys sent SPS a demand letter (Cmplt. Ex. A), notifying SPS of Plaintiff's intent to file a lawsuit against SPS, under the CLRA, for charging her the EZ Pay fees (the "CLRA Demand"). The CLRA Demand was sent on behalf of both Plaintiff and, purportedly, on behalf of a class of unnamed individuals who had also paid these fully-disclosed fees. On June 20, 2023, SPS' attorneys timely responded by letter to Plaintiff's CLRA Demand. Sussman Decl. Ex. 3 (the "CLRA Response").[4] The CLRA Response (among other things) denied all liability and informed Plaintiff of SPS' actions taken in response to her letter. As a customer courtesy, SPS refunded to Plaintiff all of the EZ Pay fees that she had been charged, in the total amount of $50.00, by applying that amount to the unpaid principal balance of Plaintiff's mortgage loan. *Id*. at p. 3. SPS also programmed its loan servicing system so that it does not charge Plaintiff any EZ Pay fees if Plaintiff elects a payment method that otherwise would be subject to an EZ Pay fee. *Id*.

## ARGUMENT

## I. PLAINTIFF LACKS INJURY OR STATUTORY STANDING AS TO THREE OF HER FOUR CLAIMS, REQUIRING DISMISSAL.

Three of Plaintiff's claims—her First, Third, and Fourth Cause of Action—must be dismissed under Rule 12(b)(6) because she cannot claim any plausible current or future injury as a result of SPS' charging of the EZ Pay fees. SPS has refunded all of the EZ Pay fees that Plaintiff was charged, in the amount of $50.00, and programmed its system to no longer charge Plaintiff any future EZ Pay fees. This means that Plaintiff both lacks any credible allegation of damages required to support her claims and lacks standing to sue, or both.

---

[4] The Court may take judicial notice of the CLRA Response because it is incorporated by reference in Plaintiff's Complaint (Cmplt. ¶¶ 72, 73), and because Plaintiff attached only the CLRA Demand, and not the corresponding CLRA Response, to her Complaint (Cmplt. Ex. A). *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *3-4 (N.D. Cal. Nov. 8, 2021) (taking judicial notice of defendant's response to CLRA demand letter).

Plaintiff's breach of contract claim (First Cause of Action) fails because she cannot plausibly allege the requisite actual damages necessary to state a claim. "Under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). "Failure to [allege compensable damages] justifies dismissal under Rule 12(b)(6)." *Becerra v. Allstate Northbrook Indem. Co.*, 2022 WL 2392456, at *6 (S.D. Cal. July 1, 2022) (citing *Mason v. Allstate Ins. Co.*, 2014 WL 212245, at *3 (C.D. Cal. Jan. 6, 2014) (Selna, J.)); *see* Cal. Civ. Code § 3300 (measure of damages for breach of contract claim is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby"). Plaintiff alleges damages with her claim that SPS' "charging [of] [EZ] Pay fees" breached the mortgage agreement. Cmplt. ¶¶ 45, 46. But SPS refunded the total amount of EZ Pay fees that Plaintiff was charged, so she cannot satisfy the damages element of her breach of contract claim. As there are no further damages to compensate, the breach of contract claim must be dismissed. *See Becerra*, 2022 WL 2392456, at *6-7 (dismissing breach of contract claim where plaintiff had already recovered maximum damages to which she was entitled under contract); *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1089 (2005) ("plaintiff cannot show it suffered any contract damages" where defendant had already paid plaintiff maximum potential liability).

Plaintiff's CLRA claim (Fourth Cause of Action) also must be dismissed because she has no damages and faces no prospect of ever having any. "[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1135-36 (N.D. Cal. 2023). That is the situation Plaintiff presents to this Court. *See Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299-301 (Cal. 2009) (the "mere employment of an unlawful practice" does not authorize plaintiff to bring a

1  CLRA claim; there is no statutory standing where an uninjured plaintiff sues under
2  the CLRA).

3      Plaintiff's UCL claim (Third Cause of Action) does not state a claim either.
4  Plaintiff cannot make any plausible allegation that she has any current, or may
5  suffer a future, "injury in fact" or "lost money or property," for which Plaintiff is
6  entitled to restitution or injunctive relief.  Cal. Bus. & Prof. Code § 17204; *Gardner
7  v. Safeco Ins. Co. of Am.*, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014)
8  (damages are not available under the UCL, which provides for only restitution and
9  injunctive relief).  "The California electorate limited private standing under the
10 UCL to any person who has suffered injury in fact and has lost money or property
11 as a result of unfair competition."  *Elliott v. QF Circa 37, LLC*, 2017 WL 6389775,
12 at *12 (S.D. Cal. Dec. 14, 2017).  "This statutory limitation requires that a plaintiff
13 show he has suffered losses capable of restitution, as restitution or an injunction are
14 the only remedies available for violation of the UCL."  *Zeppeiro v. Green Tree
15 Servicing, LLC,* 2014 WL 12596427, at *10 (C.D. Cal. Oct. 17, 2014) (Morrow, J.).
16 Plaintiff appears to acknowledge this: in her Complaint, she requests relief under
17 the UCL that "the Court cause [SPS] to restore the money to Plaintiff and the Class
18 members, and to enjoin [SPS] from continuing to violate the UCL in the future."
19 Cmplt. ¶ 61.  Where, as here, there is no present and viable injury, as SPS has
20 "restore[d]" the EZ Pay fees Plaintiff was charged and waived "future" fees for
21 Plaintiff (*id*.), the Court cannot "fashion an order directing that [SPS] make
22 restitution" and the UCL claim must be dismissed for lack of standing.  *Zeppeiro,*
23 2014 WL 12596427, at *10.

24
25
26
27
28

7

## II.    THE COMPLAINT OTHERWISE IS DEFICIENT AND SHOULD BE DISMISSED IN ITS ENTIRETY.

### A.    THE BREACH OF CONTRACT CLAIM (FIRST CAUSE OF ACTION) SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT PLAUSIBLY ALLEGED ANY BREACH.

Plaintiff's two theories of contract breach are each insufficient to state a claim.  Plaintiff alleges that SPS' EZ Pay charges breached the DOT because they were not authorized by the contract or, alternatively, because the charges were prohibited by law.  *See, e.g.,* Cmplt. ¶¶ 4, 5, 7, 9, 17, 19, 23, 26-28, 38, 44-47.[5]  Plaintiff is wrong on both scores.

#### 1.    There was no breach under Plaintiff's claim that the EZ Pay fee was not "authorized" in the DOT.

Plaintiff's contention that the DOT was breached because the EZ Pay fees were not "authorized" or "allow[ed]" by the DOT (Cmplt. ¶¶ 4, 9, 17, 23, 45) suffers from a fundamental flaw: its premise is factually untrue, and so cannot be the basis for a claim.

The language in Plaintiff's DOT expressly precludes this theory, as that agreement addresses servicing fees like the EZ Pay fee.  Contrary to Plaintiff's argument that a fee cannot be charged unless authorized in the DOT, that agreement states that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee."  Sussman Decl. Ex. 1 ¶ 14 ("Loan Charges").[6]  The DOT further

---

[5] In what appears to be a remnant from another brief, Plaintiff makes cursory reference in her Complaint to the "FHA rules and guidelines."  Cmplt. ¶ 46. Whatever the intent of this reference, it has no bearing on the allegations here, as Plaintiff's loan is not insured by the Federal Housing Administration.  *See* Sussman Decl. Ex. 1.

[6] To be clear, SPS does *not* contend that the EZ Pay fee is a "default related fee," as referenced in Paragraph 27 of Plaintiff's Complaint and Paragraph 14 of Plaintiff's DOT.  Instead, the EZ Pay fee is authorized under the language in Paragraph 14 of Plaintiff's DOT referring to "any other fees."  Sussman Decl. Ex. 1 ¶ 14 ("In regard to any other fees, the absence of express authority in this Security Instrument to

8

underscores the parties' ability to contract for a service fee, noting that local or federal law may permit such additional agreements or may be silent on the right of the parties to contract "but such silence shall not be construed as a prohibition against agreement by contract." *Id.* ¶ 16 ("Governing Law").[7]

Numerous courts have rejected plaintiffs' arguments that charging certain fees in a mortgage servicing relationship—including convenience fees for making mortgage payments over the phone or online—breached mortgage agreements because the fee was not named in a mortgage or deed of trust. Most recently, the Court of Appeals for the Tenth Circuit affirmed dismissal of a breach of contract claim based on convenience fees charged by a mortgage servicer for making telephonic mortgage payments, relying on the Loan Charges term as precluding the cause of action. *Matchett v. BSI Fin. Servs.*, 2023 WL 4678683, at *4 (10th Cir. July 21, 2023). Courts in this District and others have reached the same conclusion, finding no breach as to fees charged for mortgage payments made by telephone and online because of the authority reserved to the parties under the "Loan Charges" provision in the plaintiffs' mortgage agreements. *See Torliatt*, 2020 WL 1904596, at *5; *Lish*, 2020 WL 6688597, at *8; *accord Beer v. Nationstar Mortg. Holdings, Inc.*, 2015 WL 13037309, at *3-4 (E.D. Mich. July 15, 2015); *Weller v. JP Morgan Chase Bank, N.A.*, 2017 WL 3581099, at *7 (N.D. W. Va. Aug. 18, 2017).[8]

---

charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.").

[7] Plaintiff makes a passing reference to the contention that the fee is prohibited under the contract. Cmplt. ¶ 5. There is nothing in Plaintiff's DOT prohibiting the fee (as discussed above, the fee is in fact allowed under the DOT's express language). Plaintiff's DOT "simply does not prohibit [SPS] from charging a fee for telephonic [or online] payments." *Lish*, 2020 WL 6688597, at *8; *accord Thomas-Lawson*, 2021 WL 1253578, at *5; *Matchett*, 2023 WL 4678683, at *4.

[8] *See also Manos v. MTC Fin., Inc.*, 2018 WL 6220051, at *6 (C.D. Cal. Apr. 2, 2018) (Carney, J.), *aff'd*, 773 F. App'x 452 (9th Cir. 2019) (dismissing RICO claim based on challenged fees because mortgage contained "Loan Charges" provision).

9

Plaintiff's contention that the DOT was breached because there is no term which green lights this particular change is also inconsistent with California law, which governs Plaintiff's DOT (*see* Cmplt. ¶¶ 20, 28, 45; Sussman Decl. Ex. 1 ¶ 16), and allows all parties to a written contract to make subsequent binding agreements to govern their relationship thereafter. *PG-USA, Inc.*, 2009 WL 10700241, at *3; *Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *4 (S.D. Cal. March 19, 2010) (upholding validity of subsequent oral agreement); *see also Thomas-Lawson*, 2021 WL 1253578, at *6 ("new contract" for pay-by-phone service permissible); *Flores v. Collection Consultants of California*, 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (Carter, J.) (dismissing claim that defendant charged an unlawful transaction fee to accept credit card payments where the "consumer must choose to affirmatively and separately opt-in to this alternative method"). It is illogical for Plaintiff to argue to the contrary, especially when it was *she* who invited SPS to enter into the subsequent agreement to accept her payments other than by mail.

In circumstances like the one at bar, the charge is permitted because it is the product of a "separate agreement between the parties to ensure same-day posting and processing of [the borrower's] mortgage payments—an optional service [the borrower] voluntarily incurred." *Turner v. PHH Mortg. Corp.*, 2020 WL 2517927, at *2 (M.D. Fla. Feb. 24, 2020). As Judge Walter observed in considering a mortgage servicer's offer of a convenience pay-by-phone service like SPS' EZ Pay options, "when Plaintiff voluntarily chose to make a payment by telephone rather than by other, cost-free methods, she entered into a separate agreement with Defendant – she would be permitted to pay by telephone, with all of the ease and immediacy that method of payment offered, rather than by other cost-free methods, in return for [the fee]." *Lish*, 2020 WL 6688597, at *4; *accord Meintzinger v. Sortis Holdings, Inc.*, 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019) (nothing requires defendant "to accept payments by telephone, and thus nothing prohibits it

10

from offering to enter into a new contract with the debtor, *i.e.*, 'for $6, I will give you the added convenience of paying by phone.'"); *Garbutt v. Ocwen Loan Servicing, LLC*, 2020 WL 5641999, at *4 (M.D. Fla. Sept. 22, 2020) (convenience fee is "a separate optional fee" that does not "stem[] from the underlying mortgage").[9]  And, as noted above, both the "Loan Charges" and "Governing Law" provisions of the DOT preserve the state law right of the parties to enter into such agreements.

It is not surprising, then, that many courts have expressly recognized that fees charged when a borrower voluntarily chooses to use a preferred payment method (such as pay-by-phone or pay-by-web), instead of paying their mortgage by mail for free, are allowed under a written mortgage agreement even if the fee is not stated in the written document.  *See, e.g., Cassese v. Washington Mut., Inc.*, 2008 WL 8652499, at *1-3, *12 (E.D.N.Y. June 27, 2008); *Davis v. Homecomings Fin.,* 2006 WL 2927701, at *2-3 (W.D. Wash. Oct. 10, 2006); *Cappellini v. Mellon Mortg. Co.,* 991 F. Supp. 31, 33, 39-40 (D. Mass. 1997); *Jerik v. Columbia Nat'l, Inc.*, 1999 WL 1267702, at *3 (N.D. Ill. Sept. 30, 1999).  Indeed, SPS prevailed on the issue of the legality of charging such fees many years ago.  In *Chatman v. Fairbanks Capital Corp.*, the federal court confirmed that SPS' predecessor in name (Fairbanks) could enter into an extracontractual agreement with a borrower to offer services for payment by wire transfer in exchange for a fee and that it was "not required to specifically state every service-related fee in [p]laintiffs' note or mortgage."  2002 WL 1338492, at *3 (N.D. Ill. June 18, 2002).

---

[9] *See also Estate of Campbell v. Ocwen Loan Servicing, LLC*, 2020 WL 5104538, at *2 (S.D. Fla. Apr. 30, 2020) (convenience fee was a permissible "separate transaction"); *Kelly v. Ocwen Loan Servicing, LLC*, 2020 WL 4428470, at *2-3 (M.D. Fla. July 31, 2020) (same); *Reid v. Ocwen Loan Servicing, LLC*, 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020) (same); *Lang v. Ocwen Loan Servicing, LLC*, 2020 WL 5104522, at *2-3 (M.D. Fla. July 17, 2020) (same); *Bardak v. Ocwen Loan Servicing, LLC*, 2020 WL 5104523, at *2 (M.D. Fla. Aug. 12, 2020); (convenience fee was "incurred in a separate agreement"); *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 789 (N.D. Ill. 2015) (dismissing claim that "rush processing fee" was unlawful because "servicers and consumers can agree to the manner in which payments are to be made").

11

Plaintiff's theory that the EZ Pay fee cannot be charged to her unless listed in the written mortgage agreement is untenable in light of her agreement to the contrary, clear state law, and the above-cited authorities. *See Matchett*, 2023 WL 4678683, at *4 (dismissing breach of contract claim based on similar convenience fee); *Chatman,* 2002 WL 1338492, at *3 (same); *Mariscal v. Flagstar Bank, FSB*, 2020 WL 4804983, at *1, 4 (C.D. Cal. Aug. 4, 2020) (same); *Torliatt,* 2020 WL 1904596, at *5 (same); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same); *Lish*, 2020 WL 6688597, at *8 (same); *Bardak*, 2020 WL 5104523, at *4 (same); *see also Brien v. J.P. Morgan Chase Bank, N.A.,* 2010 WL 11597806, at *5 (C.D. Cal. July 9, 2010) (Gee, J.) (dismissing breach of contract claim where challenged conduct was authorized under the contract).

### 2. There was no breach on the theory that the EZ Pay fee was prohibited by law.

Plaintiff's alternative contention is that SPS breached the DOT by charging her an illegal fee. Cmplt. ¶¶ 5, 23, 38, 45, 46. This theory cannot support the contract cause of action either.

Plaintiff alleges that the EZ Pay fees were illegal because they violated the Rosenthal Act. Cmplt. ¶¶ 45, 46. As explained in Section II.B below, Plaintiff's Rosenthal Act claim (Second Cause of Action) should be dismissed for failure to state a claim. For the same reasons, Plaintiff's assertion in this First Cause of Action that the EZ Pay fees were prohibited because of the same Rosenthal Act provisions also does not state a claim. *See Mariscal*, 2020 WL 4804983, at *4 (dismissing breach of contract claim based on alleged violation of Rosenthal Act because plaintiffs failed to state a claim under Rosenthal Act); *Thomas-Lawson*, 2021 WL 1253578, at *6 (dismissing breach of contract claim based on alleged violation of FDCPA because plaintiffs failed to state an FDCPA claim).

Plaintiff's theory that the EZ Pay fees are illegal fails for other reasons, too. As an initial and dispositive matter, as discussed at length in Section II.A.1 above,

courts recognize that borrowers and loan servicers in a home mortgage servicing relationship are empowered by law to agree that the mortgage company will provide an extra service for the convenience of the borrower so long as the borrower agrees to pay a fee for that service.  Such a voluntary agreement is not illegal.

Independent of that legal permission, federal law—an order of a United States district court—permitted *SPS in particular* to charge service fees such as the EZ Pay fees.  A Consent Order entered by the federal district court in Massachusetts, in a case brought against SPS by the Federal Trade Commission, set forth fee standards that, if met, permit customer charges.  *See* Sussman Decl. Ex. 4, *United States v. Fairbanks Capital Corp.*, No. 1:03-cv-12219 (D. Mass.), ECF 6 ("2003 Order").[10]  Specifically, the FTC Orders prohibit SPS from charging servicing fees "unless it is for services actually rendered" and (as relevant here), imposed "after clear and conspicuous disclosure of the fee" and "explicit consent" from the consumer.  Sussman Decl. Ex. 4 at 10, Ex. 5 at 9-10.  The impact of those FTC Orders—and, in particular, the use of the word "unless"—is that SPS is permitted to charge servicing fees so long as the stated conditions are met.

Plaintiff does not allege any facts that would plausibly suggest that the EZ Pay fees were not permitted by these federal court orders, or that Plaintiff did not request the electronic payment service, or the fee was not disclosed to her in advance, or that she did not consent to the fee.[11]

---

[10] SPS is the successor by name change to the defendant Fairbanks, as reflected in a modification of the Order that did not alter the relevant provision.  *See* Sussman Decl. Ex. 5, Modified Stipulated Final Judgment and Order, *United States v. Select Portfolio Servicing, Inc. (formerly Fairbanks Capital Corp.)*, No. 1:03-cv-12219 (D. Mass.), ECF 96 ("2007 Modified Order").  The 2003 Order and the 2007 Modified Order are referred to collectively herein as the "FTC Orders."  The Court may take judicial notice of the FTC Orders because they are public court records.  *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 802 (N.D. Cal. 2019).

[11] *See* Sussman Decl. Ex. 2 at pp. 1, 2 (disclosing that EZ Pay fee of "up to $15.00" would be charged for mortgage payments made by phone or website and showing EZ Pay fee after it had been charged).

**B.    THE ROSENTHAL ACT CLAIM (SECOND CAUSE OF ACTION) SHOULD BE DISMISSED.**

Plaintiff alleges that SPS violated Section 1788.13(e) of the Rosenthal Act, which provides that: "No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:  . . . (e) The false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation."  Cal. Civ. Code § 1788.13(e).[12]  Plaintiff's allegation—that SPS violated Section 1788.13(e) of the Rosenthal Act "[b]y assessing [EZ Pay] fees" because SPS "represented that the mortgage loans of the Plaintiff and the Class and that [sic] their debts may be increased by the addition of the [EZ Pay] fees, even though [EZ Pay] fees may not be legally added to the existing obligation" (Cmplt. ¶ 53)—suffers from at least three fundamental problems, each of which require dismissal.

First, Plaintiff has identified no specific actionable representation by SPS that could support her Rosenthal Act claim.  The vague and conclusory allegation—made "upon information and belief"—that SPS "represented to Plaintiff Mirabadi that the unlawful [EZ Pay] fees may be assessed to her mortgage loan" (Cmplt. ¶ 18) is insufficient to plausibly show that SPS made any actionable statement at all. *Lembeck*, 498 F. Supp. 3d at 1137 (dismissing Rosenthal Act claim; "[plaintiff] has not alleged that [defendant] represented that the IVR fee could 'increase' the underlying [mortgage] debt.  In other words, there is no suggestion that if a

---

[12] Plaintiff also makes a passing reference in the Background section of her Complaint to Section 1788.14(b) of the Rosenthal Act, which prohibits a debt collector from "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, *except as permitted by law*."  Cal. Civ. Code § 1788.14(b); Complaint ¶ 15 (emphasis added).  While not alleged, any implication that SPS violated Section 1788.14(b) of the Rosenthal Act is easily dispensed with; as explained in Sections II.A.1, 2, *supra*, the EZ Pay fee is permitted by state and federal law.

borrower somehow used the IVR system without actually paying the IVR fee, that fee would be added to the amount of the principal loan such that the borrower would pay interest on the fee going forward."); *Lish*, 2020 WL 6688597, at *4 (same; "Defendant did not require or force Plaintiff to make her mortgage payment by telephone and she was never told that she could not use any of the other payment options that did not include a fee."); *see also Haroutoonian v. NewRez LLC*, 2023 WL 2626970, at *4 (C.D. Cal. Jan. 10, 2023) (Carney, J.) (dismissing Rosenthal Act claim where plaintiff failed to allege any specific representation defendant made to him); *Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *2-3 (C.D. Cal. Feb. 15, 2009) (Guilford, J.) (same), *aff'd* 445 F. App'x 920 (9th Cir. 2011).

It is not surprising that Plaintiff has not identified any actionable misrepresentation. Though not alleged—perhaps strategically—when someone in Plaintiff's position arranges for an electronic payment and agrees to pay an associated EZ Pay fee, that fee is included among the amounts to be paid through electronic means. The EZ Pay fee is not an assessment to the loan and so there would not have been a representation that implicates the Rosenthal Act. Plaintiff's failure to clearly allege that SPS stated that "the consumer debt may be increased," Cal. Civ. Code § 1788.13(e), bars this claim.

Second, Plaintiff's allegation that the EZ Pay fees were not legally added to the existing debt obligation can be dismissed on its face because, as noted in Section II.A.1 above, the EZ Pay fees were not added to the existing mortgage debt. Instead, they were separate charges incurred and paid at the same time the EZ Pay services were requested and rendered. *See Lish*, 2020 WL 6688597, at *4 (dismissing Rosenthal Act claim; "the convenience fees – fees only collected by and paid Defendant at the time of a telephonic payment – are not part of or included in the underlying debt"); *Thomas-Lawson*, 2021 WL 1253578, at *5-6 (same; fees "are the subject of valid, separate agreements into which Plaintiffs freely and lawfully entered"); *Flores*, 2015 WL 4254032, at *10 (same; "this charge would be

15

imposed only if the debtor elected to pay via credit card. . . .  A consumer must choose to affirmatively and separately opt-in to this alternative method."); *see also Matchett*, 2023 WL 4678683, at *4 ("although Plaintiff correctly argues that Defendant cannot unilaterally add fees to her mortgage, Plaintiff admitted to the district court that she could have mailed her payment to Defendant to avoid paying the phone fees").

Third, Plaintiff cannot state a claim based on her theory that the EZ Pay fees are illegal.  That is because, as shown in Sections II.A.1, 2, *supra*, and as case law specific to the Rosenthal Act confirms, the fees were "permitted by law."  *Mariscal v. Flagstar Bank, FSB*, 2021 WL 4260879, at *6 (C.D. Cal. Sept. 9, 2021) (dismissing Rosenthal Act claim); *accord Thomas-Lawson*, 2021 WL 1253578, at *6 (dismissing Rosenthal Act claim because it "incorrectly presuppose[d] that pay-to-pay fees are prohibited by the [Rosenthal Act], but they are not"); *see also Lish*, 2020 WL 6688597, at *3-4 (dismissing Rosenthal Act claim; "Defendant simply offered Plaintiff the *option* to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so") (emphasis in original).[13]

---

[13] Plaintiff's citations to *Sanders v. LoanCare LLC* and *Bagdasaryan v. Bayview Loan Servicing, LLC* do not help her.  *See* Cmplt. ¶ 28.  In *Sanders*, the court denied the defendant's motion to dismiss the plaintiff's claim under Section 1788.17 of the Rosenthal Act, which provides that debt collectors shall comply with the provisions of the FDCPA.  2019 WL 441964, at *5-7 (C.D. Cal. Feb. 1, 2019) ("the Court emphasizes that Plaintiff is permitted to proceed on her Rosenthal Act claim only on the basis of Defendant's alleged violation of [the FDCPA.]").  Here, Plaintiff does not allege a violation of the FDCPA or a violation of Section 1788.17 of the Rosenthal Act, so the *Sanders* decision is entirely inapposite.  Plaintiff's citation to *Bagdasaryan* is likewise unavailing.  In *Bagdasaryan*, the court held that the plaintiffs had stated a claim under Section 1788.13(e) based on the allegation that defendant "removed money into escrow accounts and charged other undisclosed fees as a means of increasing Plaintiffs' debt."  2015 WL 13665037, at *13 (C.D. Cal. Oct. 19, 2015).  Those allegations are nothing like Plaintiff's allegation here: that SPS charged a disclosed and consented-to fee at the time the requested services were provided.

16

### C.   THE "UNLAWFUL" UCL CLAIM (THIRD CAUSE OF ACTION) SHOULD BE DISMISSED.

Plaintiff's derivative UCL claim should be dismissed because it is predicated on the same faulty theory underlying her Rosenthal Act claim.  Cmplt. ¶ 59 ("[SPS'] conduct described herein violates the [Rosenthal Act].  These violations are sufficient to support Plaintiff's claim under the unlawful prong of the UCL.").  Plaintiff's claim that the EZ Pay fees are prohibited under the "unlawful" prong of the UCL must be dismissed on this basis.[14]  *Lish*, 2020 WL 6688597, at *4 (dismissing similar claim based on convenience fees charged by mortgage servicer; "because Plaintiff has failed to state a claim under [] the Rosenthal Act . . ., the UCL claim also fails"); *Mariscal*, 2020 WL 4804983, at *4 (same; "[s]ince [Plaintiffs'] Rosenthal Act claim is deficient . . . , their UCL claim also fails"); *Elbert v. RoundPoint Mortg. Servicing Corp.,* 2020 WL 4818605, at *3 (N.D. Cal. Aug. 19, 2020) (same; dismissing UCL claim that was "wholly derivative" of failed Rosenthal Act claim); *see also Thomas-Lawson*, 2021 WL 1253578, at *6 (same; dismissing UCL claim that "mimic[ed] or rel[ied] on the alleged FDCPA claim" after dismissing FDCPA claim).[15]

### D.   THE CLRA CLAIM (FOURTH CAUSE OF ACTION) SHOULD BE DISMISSED.

Before addressing ways Plaintiff's CLRA claim fails for some of the reasons her other claims fail, the Court can and should dismiss this cause of action because

---

[14] Plaintiff does not allege a violation of the "unfair" or "fraudulent" prongs of the UCL.  Nor could she—as noted, there was nothing improper about SPS charging the fully-disclosed and consented-to EZ Pay fees.

[15] Plaintiff inexplicably asserts, in the section of her Complaint outlining her claim under the "Third Cause of Action For Violation of The 'Unlawful' Prong of the UCL," that SPS "has been unjustly enriched at the expense of Plaintiff and the Class members."  Cmplt. ¶ 60.  This allegation has nothing whatsoever to do with Plaintiff's UCL claim, so the reason for the allegation is unclear.  In any event, "[i]t is settled that a quasi-contract action for unjust enrichment does not lie where, as in this case, express binding agreements exist and define the parties' rights." *Montez v. Chase Home Fin. LLC*, 2016 WL 4006524, at *9 (S.D. Cal. Feb. 1, 2016).

it is subject to a unique defense: the CLRA does not apply to home mortgage loans.  A mortgage loan is not a consumer transaction or relationship within the scope of the CLRA because it is neither a "good," as that term is defined under the CLRA (*i.e.*, "tangible chattels bought or leased for use primarily for personal, family, or household purposes") nor a "service," as that term is defined under the CLRA (*i.e.*, "work, labor, and services for other than a commercial or business use") (*see* Cal. Civ. Code § 1761(a)-(b)).  *Reynoso*, 2009 WL 3833298, at *9. Courts have routinely applied these definitions and rejected application of the CLRA to mortgage loans and "ancillary" mortgage services, including where the subject of the claim is an agreed servicing fee like SPS' EZ Pay fee.  *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009) ("Using the existence of [] ancillary services to bring intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'"); *Corral v. Nationstar Mortg., LLC*, 2020 WL 802966, at * 5 (E.D. Cal. Feb. 18, 2020) ("ancillary services to a mortgage loan like [the EZ Pay fee] at issue here[] do not fall under the CLRA's purview"); *accord Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1032 (E.D. Cal. 2016) ("[D]efendant's mortgage services do not fall within the coverage of the CLRA.").  That Plaintiff's allegations concern fees charged in the course of mortgage servicing "does not bring a [mortgage] loan within the scope of the CLRA and that statute's definition of 'services.'"  *Becker v. Wells Fargo Bank, N.A., Inc.*, 2011 WL 1103439, at *13 (E.D. Cal. Mar. 22, 2011).

Even if the CLRA applied, the CLRA claim is factually and legally deficient. Plaintiff alleges that SPS' "policies, acts, and practices" in charging the EZ Pay fee violated Sections 1770(a)(7) and 1770(a)(14)[16] of the CLRA (Cmplt. ¶ 67), and

---

[16] *See* Cal. Civil Code § 1770(a)(7) (prohibits "[r]epresenting that goods or services are of a particular standard, quality, grade, or that goods are of a particular style or model, if they are of another"); Cal. Civil Code § 1770(a)(14) (prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law").

that SPS "fraudulently deceived Plaintiff." Cmplt. ¶ 68. The cited CLRA sections do not make "policies" illegal; they are addressed to representations. But the Complaint allegations fail to identify any "representation" that SPS made to Plaintiff, as is otherwise required to state a claim under these sub-parts of the CLRA. *Spiegler v. Home Depot U.S.A., Inc.*, 2008 WL 2699787, at *11 (C.D. Cal. June 30, 2008).[17] Plaintiff's claim of alleged deceit at least asserts some sort of representation, but it sounds in fraud and so she "must plead [her] CLRA claim with particularity" under Rule 9(b). *Clark v. InComm Fin. Servs., Inc.*, 2023 WL 3149284, at *5 (C.D. Cal. March 16, 2023) (Bernal, J.) (citing *Kearns*, 567 F.3d at 1127). Plaintiff, however, has not satisfied Rule 9(b)—or even Rule 8—as to her CLRA claim. "Nowhere in the Complaint do[es] Plaintiff[] specify what representations [SPS] made, why they were misleading, whether [she] relied on them, or where [any] omitted information should have been disclosed." *Clark*, 2023 WL 3149284, at *5.

Plaintiff's CLRA claim also posits that SPS inserted an unconscionable term into a contract, invoking Section 1770(a)(19). The Court need not delve into the welter of authorities addressing unconscionability concepts to conclude that charging a fee after full disclosure and consent, in response to a party's request for a special service, is not unconscionable (*Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1138-40 (N.D. Cal. 2010)—particularly in light of the authorities discussed in detail in Section I above.

## <u>CONCLUSION</u>

For the foregoing reasons, SPS respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

---

[17] To the extent Plaintiff may base her CLRA claim on advertising by SPS, she has alleged no facts to support that argument, either; indeed, she has not even used the word "advertise" in her Complaint. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (CLRA claim based on advertisement requires plaintiff to "specify what the [] advertisements or other sales material specifically said . . . . [and] when [Plaintiff] was exposed to them").

1

Dated:  October 30, 2023

2

3                                        Respectfully submitted,

4                                        By: */s/ Alyssa A. Sussman*

5

6                                             LAURA A. STOLL
                                              *LStoll@goodwinlaw.com*
7                                             ALLISON J. SCHOENTHAL
                                              *ASchoenthal@goodwinlaw.com*
8                                             ALYSSA A. SUSSMAN
                                              *ASussman@goodwinlaw.com*
9

10                                            Attorneys for Defendant
                                              SELECT PORTFOLIO SERVICING,
11                                            INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM ISO MOTION TO DISMISS